IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAWN DULLEY,                                        2:12-cv-01584- RE

           Plaintiff,                              **OPINION AND ORDER**

     v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

           Defendant.


**REDDEN**, Judge:

Plaintiff Dawn Dulley ("Dulley") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

her claim for disability insurance benefits ("DIB") and supplemental security income benefits

("SSI"). For the reasons set forth below, the decision of the Commissioner is affirmed and this

matter is dismissed .                        .


1  - OPINION AND ORDER

## BACKGROUND

Dulley filed her applications for SSI and DIB on September 9, 2008, and March 3, 2010, alleging disability since October 1, 2004, due to fibromyalgia, stomach, bladder, scoliosis, depression, and alcoholism.  Tr. 75, 78. Dulley was 45 years old on her alleged onset date.  Her applications were denied initially and upon reconsideration.  A hearing was held on March 3, 2011.  The Administrative Law Judge ("ALJ") found her not disabled.  Dulley's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Dulley had the medically determinable severe impairments of chronic severe alcoholism, fibromyalgia, and cervical spine spondylosis and facet arthrosis.  Tr. 21.

The ALJ found that Dulley's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  Tr. 24.

The ALJ determined that Dulley "would be disabled when her alcoholism is factored in, if for no other reason than that she would miss work when drinking.  Excluding her alcoholism, she is not disabled per the vocational expert's testimony, discussed below."  Tr. 27.

The ALJ determined that, without considering alcohol abuse, Dulley retained the residual functional capacity ("RFC") to perform a reduced range of light work, lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting  for approximately six hours in an eight hour day, and walking and standing for four hours in an eight hour day.  She can occasionally perform postural activities.  She cannot climb ladders, stairs, ramps, and scaffolds, and should avoid concentrated exposure to hazards.  Tr. 23.

At step four, considering alcohol abuse, the ALJ found Dulley could not perform her past relevant work as a waitress, but if alcohol abuse was not considered, Dulley was capable of performing other work, including mail clerk, cleaner/polisher, and electronics worker. Tr. 29-30. Dulley argues that the ALJ erred by: (1) failing to properly evaluate her alcohol abuse; (2) finding her not fully credible; and (3) improperly weighing medical opinions.

## DISCUSSION

### I. Drug and Alcohol Abuse

The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. §§ 423(d)(2)(C); 1382c(a)(3)(J) , 20 C.F.R. § 416.935. An ALJ must conduct a drug and alcoholism analysis ("DAA analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. *Id., Parra v. Astrue,* 481 F.3d 742, 745 (9th Cir. 2007). The claimant bears the burden of proving her substance abuse is not a material contributing factor to her disability. *Id.*

As noted, the ALJ found that, considering alcohol abuse, plaintiff was disabled. However, the ALJ found that plaintiff's remaining limitations if she stopped using alcohol were not disabling.

Plaintiff argues "the ALJ did not establish that Plaintiff's condition would improve to a non-disabled state upon cessation of alcohol use...." Plaintiff's Brief at 23. However, the burden is on plaintiff to prove her substance abuse is not a material contributing factor to her disability. *Parra,* 481 F.3d at 745.

3 - OPINION AND ORDER

Plaintiff cites the Program Operations Manual System ("POMS") for the proposition that a finding of materiality will be made only if other impairments are exacerbated by alcoholism and the evidence demonstrates that, after a period of one month of abstinence, the remaining impairments are not disabling. POMS: DI 90070.050.

POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ. *Lockwood v. Commissioner Social Sec. Admin.,* 616 F.3d 1068, 1073 (9th Cir. 2010). Moreover, Section DI 90070.050(D)(3), cited by Plaintiff, provides one example of when alcoholism is a contributing factor material to the disability determination: when "[t]he individual's other impairment(s) is exacerbated by [alcoholism] and the evidence documents that , after [an alcohol free] period of 1 month, the other impairment(s) is by itself not disabling." Https://secure.ssa.gov/apps10/poms.nsf/lnx/0490070050. The policy does not require a materiality finding only if other impairments are exacerbated by alcoholism and the evidence documents a one month period of abstinence. The ALJ's determination that alcoholism was a contributing factor material to the disability determination is supported by substantial evidence.

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

Plaintiff testified that she has fibromyalgia and osteoarthritis.

/ / /

/ / /

/ / /

5 - OPINION AND ORDER

> I have pain constantly throughout my entire body, more pronounced in my joints, the tissues surrounding the joints. I have problems standing for more than like 15 or 20 minutes at a time and, and that's very uncomfortable for me. Sitting I have to constantly shift positions, stand frequently, move around a little bit. The fatigue that goes along with that is very limiting. There are days when I hardly get out of bed, more or less just to take care of my basic needs. It's, it's very exhausting.
>
> ....
>
> I also have the scoliosis which I have–its been quite a few years since that was looked at but at that time I had a 20 percent curvature of my upper spine but that causes me a lot of shoulder pain. The arthritis in my neck is, is very– I don't have a lot of range of motion in my neck. The headaches and migraines very frequently cause me to – I, I get a real sensitivity to light. Then during those times I pretty much need to pull the blinds to make it as dark as possible, lay down, have quiet, close my eyes, sleep if at all possible and that seems to be about the only thing that really helps that.

Tr. 46-47.

Plaintiff testified she has depression and memory problems. *Id.* She testified she has confusion and cognitive impairments from fibromyalgia, and dizziness as a side effect of medications. Tr. 51. Plaintiff testified she has anxiety attacks "a couple of times a month," which last for 20-60 minutes or more. She does not get out of bed "two or three times a month maybe." Tr. 53. Plaintiff testified she has PTSD which causes nightmares "maybe once a month, every couple of months." *Id.* Plaintiff testified she has headaches "a couple of times a month. They last sometimes half a day, sometimes the whole day and that's such a severe pain it's like sometimes it feels like–I, I sometimes explain it as I have a headache that goes all that way down my back." Tr. 53-54. Plaintiff testified she can sit for "maybe a half-hour at the maximum" before having to stand, and that she can alter sitting and standing for "probably less than two hours" before she has to lay down for one to four hours. Tr. 54-55. She has numbness

6 - OPINION AND ORDER

and tingling in the dominant left arm and hand which make it difficult to write a full page without stopping, and tends to "drop things a lot." Tr. 55. She has trouble grasping small items, and cannot consistently lift five pounds. Reaching overhead causes pain in her shoulders and back. Plaintiff testified that her cognitive abilities "have diminished quite a bit," and that she is slower mentally and physically. Tr. 58. She testified that showering and grooming were "pretty exhausting," and household chores and cooking were done in increments.

The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible to extent they are inconsistent with the residual functional capacity assessment. Tr. 26. The ALJ noted that plaintiff's symptom testimony conflicts with the medical evidence. Tr. 28. Examining physician Michael Sant, M.D., found plaintiff had no limitations in sitting, standing, or handling objects. Tr. 637. Reviewing physician Mary Ann Westfall, M.D., found plaintiff could lift up to 50 pounds, stand and walk about six hours in an eight-hour day, and sit for about six hours in an eight-hour day. Tr. 639. Dr. Westfall found plaintiff's ability to handle objects was unlimited. Tr. 641. The ALJ noted that Dr. Sant's physical examination of plaintiff showed a normal range of motion in all areas, including cervical and shoulder, and full strength with no pain behavior in all tested muscles, including the shoulders and hands. Tr. 26, 636. Dr. Sant's examination showed normal coordination and gait. Tr. 26, 637.

Plaintiff argues the ALJ erred by rejecting her testimony regarding migraine headaches. An impairment may be disabling and medically determinable only when there is evidence of symptoms, signs and laboratory findings from an acceptable medical source. 20 C.F.R. §§ 404.1508; 404.1512(b)(1).

7 - OPINION AND ORDER

However, in her September 2008 application plaintiff did not allege migraines. Tr. 185. In her January 2009 appeal plaintiff did not allege migraines. Tr. 199-206. In a February 2009 pain questionnaire plaintiff did not allege migraines. Similarly, in October 2009 plaintiff did not allege migraines. Tr. 235-49.

Plaintiff points to an April 2008 MRI report in which Jeffrey Drutman, M.D., notes "several foci of signal abnormality in the white matter of both cerebral hemispheres. The findings are nonspecific. They may reflect chronic senescent ischemic microvascular disease and are slightly greater than is generally seen with a patient of this age. Is there a history of hypertension, diabetes or migraine headaches?" Tr. 319. Dr. Sant specifically considered Dr. Drutman's report, and others, and diagnosed fibromyalgia, scoliosis, arthritis, alcohol abuse, and depression, but not migraines. Tr. 631-37. On this record, the ALJ identified clear and convincing reasons and did not err by finding plaintiff less than fully credible as to her symptoms. Any error by the ALJ in failing to specifically discuss plaintiff's alleged migraines is harmless.

## III.  Social Security Rule 96-8p

Social Security Rule 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC.  SSR 96-8p (available at 1996 WL 374184).  The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC.  The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's

/ / /

/ / /

exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairments. Here, the ALJ found that the claimant retained the RFC for light work, and she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. She can sit with normal breaks for a total of about six hours in an eight-hour workday. She will need two to three minutes every hour to change position. She can frequently stoop, kneel, crouch and climb ramps and stairs. She can occasionally balance and crawl. She can never climb ladders, ropes or scaffolds, and should avoid concentrated exposure to temperature extremes. She must avoid moderate exposure to workplace hazards such as unprotected heights and dangerous machinery. Tr. 25.

Plaintiff argues that the ALJ failed to provide "a narrative statement supporting the capacity for light work, as opposed to a more restrictive level, as required by SSR 96–8p." Plaintiff's Brief at 20. However, the ALJ described how the medical evidence supports his assessment of plaintiff's residual functional capacity. Tr. 25-28. The ALJ noted the findings of examining physician Gregory Borstad, M.D., who found in November 2010, 18 out of 18 fibromyalgia trigger points, but normal range of motion in all areas, including cervical spine, shoulders, elbows, wrists, hips, knees, and ankles. Tr. 670. Dr. Borstad found no autoimmune disease, and noted normal motor strength of 5/5 in both upper and lower extremities. *Id.* The ALJ cited the records of J.L. Stoune, M.D., who, in May 2010, "spent considerable time encouraging [plaintiff] to get emotional and spiritual support for her pain as it doesn't appear that

9 - OPINION AND ORDER

any pain medication is going to help her."  Tr. 27. 685.  Dr. Stoune's neurologic examination
was normal.

The ALJ sufficiently explained his RFC assessment and did not violate SSR 96-8p.

## IV. Medical Opinions

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1);
416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must
accord greater weight to the opinion of a treating physician than that of an examining physician.
*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In such circumstances the ALJ should also
give greater weight to the opinion of an examining physician over that of a reviewing physician.
*Id.*  But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate
reasons" for discrediting one opinion in favor of another.  *Id.* at 830.  The ALJ may reject
physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Sant that plaintiff
"may have some difficulty reaching above shoulder levels due to the degenerative changes in her
spine," and the opinion of Dr. Westfall that plaintiff's ability to reach in all directions, including
overhead, was limited.  Tr. 28, 637, 641.  The ALJ concluded there was no objective evidence of
manipulative limitations, citing the findings of examining Drs. Sant, Stoune, and Borstad of
normal range of motion, normal muscle tone and bulk, and full muscle strength in upper
extremities.  Tr. 28, 633-36.  The ALJ's rejection of Dr. Sant's speculation regarding plaintiff's
ability to reach above shoulder level is supported by specific and legitimate reasons and
supported by substantial evidence.

## CONCLUSION

For these reasons, the ALJ's decision that Dulley is not disabled is based on correct legal

standards and supported by substantial evidence.   The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this _23_ day of January, 2014.


_____
JAMES A. REDDEN
United States District Judge


11 - OPINION AND ORDER